(C.D. 2143)

HAGAN CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 22, 1959)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The above two protests were consolidated for purposes of trial and determination. The imported merchandise to which they relate is described in the invoices as "CENTRIFUGAL SEPARATING MACHINE—ATOMIX A 184 Y" and as parts of such machines.

The collector of customs classified the merchandise as articles not specially provided for, composed wholly or in chief value of base metal, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, or by the sixth protocol of supplementary concessions to said general agreement, 91 Treas. Dec. 150, T.D. 54108, and subjected it to duty at the rate of 22½ per centum or 21 per centum ad valorem, respectively.

Plaintiff claims said merchandise should be classified as machines, not specially provided for, and parts thereof, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Torquay protocol to the general agreement, 86 Treas. Dec. 121, T.D. 52739, or by the sixth protocol, *supra*, and assessed with duty at the rate of 13¾ per centum or 13 per centum ad valorem, respectively.

The pertinent text of the statutes above referred to reads as follows—

Paragraph 397, as modified by the General Agreement on Tariffs and Trade, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:
* * * * * * *
    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:
        Woven wire fencing * * *
* * * * * * *
        Other (except slide fasteners and parts
            thereof) _____ 22½% ad val.

Paragraph 397, as modified by the sixth protocol of supplementary concessions, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:
* * * * * * *
    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
* * * * * * *
        Not wholly or in chief value of tin or tin plate:
            Carriages, drays, trucks * * *
* * * * * * *
        Other, composed wholly or in chief value of
          iron, steel, brass, bronze, zinc, or alumi-
          num * * * _____ 21% ad val.

Paragraph 372, as modified by the Torquay protocol, *supra*:

Machines, finished or unfinished, not specially provided for:
    Calculating machines * * *
* * * * * * *
    Other * * *_____ 13¾% ad val.

Paragraph 372, as modified by the sixth protocol, *supra*:

Machines, finished or unfinished, not specially provided for:
    Adding machines_____ * * *
  *     *     *     *     *     *     *
    Other * * *_____ 13% ad val.

Paragraph 372 of the tariff act, and as modified, *supra*, provides that "parts" of articles therein named shall take the same rate of duty as the articles of which they are parts.

The two witnesses, Richard I. Huling, assistant chief engineer of the gas cleaning division of the plaintiff company, and Thomas G. Beckwith, a consulting engineer and a professor of mechanical engineering at the University of Pittsburgh, who testified herein, were called by plaintiff.

Huling testified that the Hagan dust collector, the name by which the device in controversy is known, is designed to separate dust particles from a gas stream. As stated by the witness, "The gas, ladened with dust particles, enters this dust collector and the dust is separated and dropped into a hopper, and the clean gases then pass out the outlet of the collector to the atmosphere."

Rather than attempt an original description, it is believed that a clearer picture of the Hagan dust collector may be gained from an examination of plaintiff's illustrative exhibit 1 and defendant's exhibit A in which will be found a pictorial representation of the subject merchandise and descriptive material depicting its parts and the manner in which the device functions as follows:

### "ATOMIX" DUST COLLECTOR

The Hagan "Atomix" Dust Collector is a multiple-tube mechanical type centrifugal separator, with no moving parts, which effectively removes dust particles from gas and air streams. Its high collection efficiency, particularly in the small particle range, makes it suitable for air pollution control and process dust recovery applications in steam power plants, cement mills, ore refining plants, steel mills, foundries, metal working shops, chemical plants, food processing plants and in other situations where such problems exist.

The "Atomix" Dust Collector consists essentially of an inlet chamber which communicates directly with a bank of vertical annular separating tubes, a dust collecting chamber, and a clean gas discharge chamber.

The design of the inlet chamber causes the entering dust-laden gas to distribute equally among the collection tubes, so that the optimum efficiency of a single tube is obtained in a multiple bank.

The special configuration of the inlet head and guide vanes of each collector tube imparts a highly efficient whirling motion to the gas in the annular space between the inner and outer shell of each tube, throwing out the entrained dust particles with high centrifugal force. The cleaned gas, still whirling, flows along the length of the tube and, reversing direction of flow within itself, moves upward and out through the inner shell of the tube.

The dust particles, which are forced to the outer shell of the tube by this continuous centrifugal action, flow downward and are discharged into the collecting chamber. Reduced diameter of the lower end of the tube causes an increase in the centrifugal forces acting on the solid particles, insuring complete and positive removal.

\* \* \* \* \* \* \*

The device is covered by United States Patent, dated December 11, 1956, and numbered 2,773,598.

An examination of the exhibits and the testimonial record fails to convince the court that the article in controversy is a machine.

Plaintiff, in its brief, places considerable reliance upon the testimony of Professor Beckwith, through whom it is attempted to establish "\* \* \* a definite distinction among machines, mechanisms and structures," to which the following "classical" definitions were given:

A *structure* is a device or assembly of parts, whose primary purpose is to *modify force.*

A *mechanism* is a device or assembly of parts, which primary purpose is to *modify motion.*

A *machine* is a device or assembly of parts, whose primary purpose is to *modify energy.* [Italics added.]

In addition to the foregoing definitions, Professor Beckwith cited the following authorities as supporting the above-quoted definitions: "Elements of Mechanism," by Professor Peter Schwamb, "Kinematics of Machines," by Guillet & Church, and "Kent's Mechanical Engineers' Handbook." While the definitions cited by Professor Beckwith are interesting, they are not persuasive nor of special value in determining whether the subject merchandise is a machine within the meaning of said paragraph 372, as judicially determined.

If we were to accept the testimony of Professor Beckwith that crowbars, hammers, and screwdrivers are machines, we would run counter to the view that said articles are not machines in a tariff sense, as indicated by our appellate court in *United States* v. *Guth Stern & Co., Inc.,* 21 C.C.P.A. (Customs) 246, T.D. 46777, and followed with apparent approval in *United States* v. *J. E. Bernard & Co., Inc.,* 30 C.C.P.A. (Customs) 213, C.A.D. 235.

Long ago, our appellate court adopted the concept which has always been followed that tariff acts are not drawn in the terms of science, but in those of commerce, presumptively the language in common use. *Meyer & Lange et al.* v. *United States,* 6 Ct. Cust. Appls. 181, T.D. 35436.

A case which lends some support to our conclusion here is *United States* v. *J. E. Bernard & Co., Inc.,* 28 C.C.P.A. (Customs) 182, C.A.D. 142. It was there held that so-called filters, for use in the clarification of certain liquids, each consisting of a frame, filter plates, and filter sheets, were not parts of machines. In the course of its opinion, the court observed from the evidence in the case it

was apparent that the filters were devices which possessed no mechanically operating features. Liquids were conveyed to and forced through them by an independent mechanism—a pump—which, so far as the record disclosed, might readily be used for pumping in other connections.

Years ago, in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, the court gave approval to the following definition of a machine: "* * * a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion." That definition, with slight modifications which are unimportant here, has been cited and followed in numerous cases.

It is admitted that the dust collector under consideration has no movable parts. While that is not a *sine qua non* to the makeup of a machine, nevertheless, it is frequently an important factor. Aside from that, however, we are unable to find upon the record before us that the device in controversy utilizes, applies, or modifies energy or force or transmits motion. It is true that the vanes on the tubes through which gases are forced by electrical fans do cause the stream of gases to take a whirling motion. However, we fail to see wherein the device itself exerts any energy or force. As a matter of fact, seemingly, the only force that enters into the operation is that created by a fan motivated by an electric motor or by the natural draft of a tall smokestack, which is not part of the dust collector itself but a separate entity. *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T.D. 39085.

In view of the foregoing authorities and upon the facts of record, we find and hold that the importation here in controversy is not a machine within the sense of that term, as used in paragraph 372, and overrule the protests in all respects.

Judgment will issue accordingly.