(C.D. 2332)

THE DURST MFG. CO., INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided April 18, 1962)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *William H. Orrick, Jr.*, Assistant Attorney General (*Henry J. O'Neill* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation of lawn sprinkler tops was classified by the collector of customs as articles in chief value of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

Plaintiff claims that said merchandise should be classified as parts of machines in chief value of metal, not specially provided for, and dutiable at 13¾ per centum ad valorem, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739. Alternative claims for duty assessments at 12½ per centum or 17½ per centum ad valorem, in paragraph 390, were abandoned.

At the trial, three witnesses were called, all of whom testified for the plaintiff.

The first witness, Norman Redlich, testified that he was secretary-treasurer of the plaintiff company and president of its wholly owned subsidiary, the Lafayette Brass Mfg. Co. During the past 10 years with Lafayette Brass, he had been directly involved in the development of revolving stationary, and oscillating sprinklers, designing them, purchasing their component parts, and merchandising such sprinklers.

As a physicist, he testified that "A rotary lawn sprinkler is basically a mechanical apparatus which uses the force of water pressure to cause

the revolving of a sprinkler arm, and through the revolving of this sprinkler arm, propels water over an equal area on a lawn." He explained that whereas a stationary lawn sprinkler continuously throws water at a given point on a lawn, a rotary lawn sprinkler has the advantage that it will enable one to cover a greater and more uniform area, because of its rotary action. Another advantage in favor of the rotary sprinkler lies in the fact that when openings in a stationary sprinkler become clogged, it causes a complete lack of water on a particular point, whereas with a revolving sprinkler, the clogging of an opening would be remedied by the revolving arm throwing water to all points on the lawn.

Collective exhibits 1, 2, and 3, which are complete lawn sprinklers, illustrate how a garden hose may be attached to a cast-iron base to which the sprinkler top is also attached.

With respect to exhibit 2, the witness testified that when water is allowed to flow into the base of the sprinkler, it passes through into the rotary sprinkler arm, forcing it onto a "phenolic fiber bearing" upon which the rotary arm will revolve. As stated by the witness—

When the water passes through this rotary sprinkler and turns the elbow corner at the end of each sprinkler arm it sets up a reaction to the water leaving the sprinkler, transmits motion to the sprinkler arm, and causes the sprinkler arm to revolve in the opposite direction from the motion of the water. Furthermore, the revolving of the sprinkler arm propels the water tangentially from the sprinkler in a rotary direction on the lawn, thereby sprinkling a uniform circular pattern around this revolving mechanism.

It seems obvious, from the foregoing, that the force which operates a rotary lawn sprinkler is, ordinarily, the force of gravity which propels water through a hose and out through the nozzles of the sprinkler. This causes the sprinkler to rotate when properly set for that purpose. Apparently, exhibits 1 and 2 are so constructed that they may also be adjusted to act as stationary sprinklers. Exhibit 3 is built on different lines from exhibits 1 and 2 and is so constructed as to operate only in a rotary motion.

As a matter of fact, the appearance, construction, and use of the sprinkler tops in controversy are typical of lawn sprinklers which one sees in common use, especially during the summer season, sprinkling lawns.

Plaintiff's second witness, Harold G. Elrod, a professor of mechanical engineering at Columbia University, New York, highly qualified in the field of fluid mechanics, used various illustrations to explain what causes the sprinkler top to revolve. To quote from his testimony—

* * * I would draw an analogy with a race car going around a circular track. The water is going around the bend, and in so doing it exerts forces on the side of the bend, in the same manner that the car exerts forces on the race track.

Also, the water leaves this nozzle, this is a force exerted by the nozzle on the water, and in turn, a force exerted by the water on the nozzle, in the same manner as if a man heaves a weight or baseball, causing a motion in this direction of the projectile, and he experiences a backward force himself. He can, if he stood on ice and threw a weight, he would probably slip backwards as a result of pushing some matter in the other direction.

The witness also likened the action of sprinkler tops to that of jet propulsion of high-speed aircraft, the reactive force of discharged gases to propel a rocket in the vacuum of free space, and the action of turbines.

Plaintiff's third witness, Herbert H. Munsey, testified that he was an aviation consultant and, for 20 years, had been a corporate patent counsel in the aviation industry. He stated that a helicopter has virtually the same operating principle as the subject lawn sprinklers, except that the helicopter uses compressed air as the fluid body rather than water.

Reduced to simple language, the testimony of the three experts who testified on behalf of plaintiff may be expressed, in substance, by saying that when a lawn sprinkler is in operation, reactive forces result based upon the principle that a fluid accelerated in one direction exerts a counterforce in the opposite direction. Therefore, the flow of water through the arm and nozzles of a lawn sprinkler—provided the nozzles are pointed in opposite directions—will cause the sprinkler top to revolve.

It is difficult to compare in legalistic terms the simple operation of a lawn sprinkler with the operation of a race car, helicopter, rocket in space, jet-propelled plane, or a turbine engine. While the principle of reactive force may be the same, their mechanical arrangement is much more complicated and effective.

In support of its contention that the sprinkler tops in controversy are within the sense of the term "machine," as employed in paragraph 372, plaintiff has cited numerous decisions of this court and of our appellate court in which sundry articles have been deemed to be machines. An examination of those cases discloses that the various articles which were held to be properly classifiable as machines differ to such an extent in their operational performance from that of the subject sprinklers as to be distinguishable in fact and in law.

A case which has some bearing upon the present controversy is *Hagan Corporation* v. *United States*, 43 Cust. Ct. 282, C.D. 2143. This court was there concerned with the classification of a so-called Hagan dust collector. This was described as a multiple-tube mechanical-type centrifugal separator, with no moving parts, used to remove dust particles from gas and air streams, making it suitable for air pollution control. It appeared that, by reason of the special configuration of the inlet and guide vanes of certain tubes, a whirling action

was given to the gas or air between the inner and outer shell of each tube, the dust particles being thrown out by centrifugal force. We held, therefore, that the device itself did not exert energy or force. As a matter of fact, the only force that entered into the operation of the device was that created by a fan motivated by an electric motor or by the natural draft of a tall smokestack, which were not parts of the dust collector itself.

A case which we deem to be directly applicable in principle is *United States* v. *Associated Mfg. Co.*, 30 C.C.P.A. (Customs) 236, C.A.D. 238. The court was there considering the proper classification of a familiar three-wheel contrivance commonly known as a tricycle, used chiefly by young children. In the course of its opinion, the court observed:

* * * We do not think, however, it can be said that such mechanical contrivances utilize energy or force. They are merely moved, carrying their riders by means of the force exercised on the pedals which turn the front wheel one revolution to every revolution made by the pedals. Energy or force is applied to the tricycle, but is not utilized by it. A tricycle, in our opinion, is no more a machine than the hoisting apparatus of the old oaken bucket wherein the rope to which the bucket was appended was wound around a drum axle by the rotation of the angle-iron handle.

Further, the court stated—

It is clear that a tricycle does not apply force or energy; the force or energy used in its propulsion is applied to it. Neither does it modify force or energy for the reason that the foot power necessary to turn the front wheel is not changed or modified in any respect by the apparatus. A tricycle such as here involved is not a mechanical contrivance for the transmission of motion.

In support of its conclusion, the court was influenced by what it termed the definition of the word "machine," contained in the decision in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, reading as follows "* * * a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion * * *." To quote from the opinion of the court:

It has been held many times by this court that that definition, while correctly defining the term "machine," is a very broad one and it never was intended to mean that every mechanical contrivance which utilizes or applies or modifies energy or force or for the transmission of motion must be considered in a tariff sense a machine. * * *

The court then cited several of its decisions in which the "definition" in the *Simon, Buhler* case had been explained or modified.

In *United States* v. *Guth Stern & Co., Inc.*, 21 C.C.P.A. (Customs) 246, T.D. 46777, the court stated that a careful analysis of its opinion in the *Simon, Buhler* case—

* * * will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term

"machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.

The court then pointed out that the reporter, in headnoting the *Simon, Buhler* case, utilized the language used in the text of the opinion and stated the definition affirmatively and, said the court—

\* \* \* it has since been often quoted by this court, and by the Customs Court, in various cases, in the form adopted by the reporter.

adding—

There is no intention of here intimating that the definition, insofar as there stated, is inaccurate. Upon the contrary, it has been consistently adhered to by us, and, by implication at least, it received legislative endorsement, particularly in the Tariff Act of 1930. \* \* \*

Further, the court pointed out that it had never been its purpose to hold arbitrarily "\* \* \* that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it." Note also *United States v. J. E. Bernard & Co., Inc.*, 30 C.C.P.A. (Customs) 213, C.A.D. 235, in which the court again considered the characteristics and properties of a mechanical contrivance to bring it within the tariff classification of a machine.

Having before us the oral and physical evidence regarding the structure and utility of exhibits 1, 2, and 3, we are satisfied that they do not possess those features which bring them within the classification of machines, as that term has been construed and applied in numerous decisions of this court and the appellate court.

To paraphrase the language above quoted describing a tricycle to the facts of the instant case, it is clear that a sprinkler top does not apply force or energy; the force or energy used in its propulsion is applied to it. Neither does it modify force or energy, for the reason that the water power necessary to operate it is not changed or modified in any respect by the apparatus. A sprinkler top, such as here involved, is not a mechanical contrivance for the transmission of motion.

Upon the facts of record and the authorities cited, we find and hold that the sprinkler tops in controversy are not parts of machines in the tariff sense. Plaintiff's claim for classification of the articles within the purview of paragraph 372 of the tariff act, as modified, is, therefore, overruled. All other claims, having been abandoned, are dismissed.

Judgment will issue accordingly.