THE DURST MFG. CO., INC. *v.* UNITED STATES (No. 5112)*

United States Court of Customs and Patent Appeals, April 25, 1963

*Allerton deC. Tompkins* for appellant.
*John W. Douglas*, Assistant Attorney General for the United States.

*C.A.D. 820.

[Oral argument February 4, 1963, by Mr. Tompkins; submitted on record by appellee]

Before RICH, Acting Chief Judge, and SMITH and ALMOND, Jr., Associate Judges

RICH, Judge, delivered the opinion of the court:

This ▮ appeal is from the judgment of the United States Customs Court, Second Division (C.D. 2332), overruling the importer's protest to the classification of the imported merchandise, rotary lawn sprinkler tops, as articles in chief value of metal not specially provided for, in paragraph 397, Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802 (GATT).

Appellant's sole contention on appeal is that this merchandise should be classified as parts of machines in chief value of metal, not specially provided for, under paragraph 372 of said Act (19 U.S.C. § 1001, par. 372), as modified by the Torquay Protocol to GATT.

The Government, appellee, has submitted on the record without filing a brief or appearing to argue the case.

The sole issue is whether rotary lawn sprinklers are "machines" within the meaning of paragraph 372. It appears to be conceded that the imported goods are "parts" of lawn sprinklers for tariff purposes. The Customs Court held lawn sprinklers of the type here involved are not "machines," as that term has been construed in certain decisions to which it referred, omitting, however, any reference to our most recent significant opinion on this question, *United States v. Idl Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756, decided more than a year before the date of the opinion below in this case.

Appellant's Exhibits 1, 2 and 3 are three lawn sprinkler assemblies, called respectively, "Duchess," "Rainbow," and "Aero-Whirl" lawn sprinklers, marketed by appellant's wholly-owned subsidiary, Lafayette Brass Mfg. Co. Each consists of a cast iron "H"-shaped base and one of the imported rotary tops, or more accurately top assemblies, which are all generally "T"-shaped, made of brass and chromium plated. They may contain certain non-metallic washers and packing elements.

The cross piece of the iron base has a horizontal passageway internally threaded at one end to receive the end fitting of a garden hose. The other end of this passageway connects with a vertical passageway which is internally threaded at its upper end to receive the hollow central leg of a rotary lawn sprinkler top assembly. Rotatably attached to the top of this leg are hollow, horizontally extending arms, the construction of which differs somewhat in the three exhibits.

In the "Duchess" model the lawn sprinkler top consists of a hollow casting about 7″ long centrally mounted on a bearing member to be

screwed into the base. At each end of the casting is an upwardly extending, angularly directed spray nozzle rotatably mounted in seats in the casting provided with packing and a threaded packing gland. Each nozzle has an adjustable head by which the character of the spray can be determined and is capable of being rotated on a vertical axis through a complete circle. Each nozzle shank has a rigid elbow which directs it upwardly at about 45° to the horizontal.

The "Rainbow" model is constructed of a central hexagonal fitting and two hexagonal end fittings interconnected by two 3¼'' pieces of threaded pipe, the central fitting being rotatably mounted in a threaded bushing for attachment to the base. The end fittings are provided with adjustable spray nozzles and, by turning the end fittings on the threaded ends of the pipes, the nozzles, which are always disposed at 90° to the axis of the pipe, may be rotated through complete circles in vertical planes. The angular settings of the end fittings with their nozzles can be fixed by means of lock nuts.

The "Aero-Whirl" sprinkler top is made of two pieces of stamped sheet metal, the upper piece being peripherally crimped around the margin of the lower piece. The overall assembly simulates an airplane propeller having two curved blades, the upper sheet metal member being crowned to provide oppositely disposed angular faces enclosing an internal space. The propeller-like unit is rotatably mounted through a hub and bushing to a short piece of threaded pipe which is screwed into the base. Instead of having attached spray nozzles, each blade of the propeller is perforated along one angular face with seven small holes through which the water is ejected. Three additional holes eject water upwardly from the center of the blade and near the center of the faces opposite those containing the seven holes, each contains a single hole. The symmetry of the arrangement of holes is such that water squirts from the two blades principally in opposite directions.

These sprinklers all operate in precisely the same manner, once the adjustable nozzles, on those having such nozzles, have been set to spray in opposite directions. Water from a garden hose enters the horizontal passageway in the base and rises upwardly through the vertical passageway therein and through the vertical central leg portion of the rotary sprinkler top. It then flows outwardly through the two horizontal arms, making about a 90° turn as it leaves the arms through holes or nozzles. Assuming the adjustable nozzles to be set to squirt in approximately opposite directions at opposite ends of the arms, which is their principal use, the sprinkler top rotates so long as the water is turned on. The spinning of the top distributes the water spray in a well-known manner.

The Customs Court deemed it "obvious * * * that the force which operates a rotary lawn sprinkler is, ordinarily, the force of gravity

which propels water through a hose and out through the nozzles of the sprinkler." We do not agree. The record shows otherwise. In response to the question, "Will you kindly explain what causes the sprinkler to revolve, the sprinkler top?," one of appellant's witnesses, Harold G. Elrod, Professor of Mechanical Engineering at Columbia University, stated:

I would draw an analogy with a race car going around a circular track. The water is going around the bend, and in so doing it exerts forces on the side of the bend, in the same manner that the car exerts forces on the race track. Also, the water leaves this nozzle, this is a force exerted by the nozzle on the water, and in turn, a force exerted by the water on the nozzle, in the same manner as if a man heaves a weight or baseball, causing a motion in this direction of the projectile, and he experiences a backward force himself. He can, if he stood on ice and threw a weight, he would probably slip backwards as a result of pushing some matter in the other direction.

One might mention that attempting to walk in a rowboat produces a similar effect.

The elementary principal upon which Professor Elrod and the other two witnesses based their explanations of the action of the sprinklers is known as Newton's third law of motion, that for every action there is an equal and opposite reaction.[1] The witnesses frequently referred to this principal. Mr. Redlich, Secretary-Treasurer of appellant, testified:

Q. Is any power or force transmitted within the sprinkler? A. Yes, the power, the force of the water going through the sprinkler forces the sprinkler arm to move in the opposite direction, applying the principle that a force exerts an equal and opposite force in the opposite direction. So that as the water leaves this rotary sprinkler it exerts a force in the opposite direction, causing the sprinkler arm to move in the opposite direction from which the water is moving.

The third witness, Mr. Munsey, testified that "the reactive force of the opposed nozzle jets causes the sprinkler head to revolve." Asked specifically about Exhibit 3, he said:

Q. What makes it go round? A. The numerous holes placed at an angular plane on the face of each blade are in such a position that they accomplish the same result as a steady jet at the tip of the tubes of Exhibit 2. In other words, the reactive force of the water squirting out the multiple holes causes the mechanism to rotate.

The witnesses also referred to the fact that the same principle of operation was present in Hero's [2] classic turbine known in the second

---

[1] The law is usually learned by every schoolboy but, if not, it is to be found in such popular works as "Visualized Physics," by Taffel, Oxford Book Company (1940), New York, wherein a pictorial illustration of the law is the very lawn sprinkler we have before us and one of the verbal "Illustrations" is the following (p. 84) :

5. It requires a number of firemen to hold the nozzle of a high pressure hose. The reaction of the nozzle to the forward motion of water tends to push it backward.

[2] More properly, Heron of Alexandria, Greek geometer and writer on mechanical and physical subjects. See Encyclopedia Britannica.

century B.C., a drawing of which Professor Elrod produced, which was put in evidence.

It seems to us highly inaccurate to say that the force operating the sprinklers is the "force of gravity," as did the court below. The energy consumed in rotating the sprinklers is kinetic energy in a moving stream of water and the stream of water moves because it is under pressure. While it is true that water is often under pressure because it has been elevated to a storage tank or reservoir, thus storing energy, it is as likely to be under pressure because it comes from a pressure tank below ground or to be flowing because it is driven by a pump. The *reactive* force which rotates the sprinkler tops when water flows out of them operates quite independently of the force of gravity; certainly it is not a gravity-operated device, as is a weight-operated grandfather's clock.

The ultimate conclusion of the Customs Court was stated thus:

> Having before us the oral and physical evidence regarding the structure and utility of exhibits 1, 2, and 3, we are satisfied that they do not possess those features which bring them within the classification of machines, as that term has been construed and applied in numerous decisions of this court and the appellate court.

The law with which it supported that conclusion appears in a discussion of but four decisions of this court, the latest of which was handed down just twenty years ago, and in one of its own decisions *Hagan Corporation* v. *United States*, 43 Cust. Ct. 282, C.D. 2143, involving a dust collector *with no moving parts*. The main burden of the lower court's opinion seems to be that the determining law is a "definition" of a machine to be found in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537. That such was really the belief of the lower court is emphasized by the following remark made by the author of its opinion to appellant's counsel during the trial, after practically all of the testimony was in:

> You know that the Customs Court have decided scores of cases in which the Court had to determine whether or not the article was a machine, *and the Simon, Buhler case settled that* by holding that "a machine *is* a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion." Why can't we get down to that proposition? [Emphasis ours.]

In 1960 we had occasion to go into the question of whether a hand-operated two-hole paper punch is a "machine" under paragraph 372 in *United States* v. *Idl Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756. That decision was handed down a year and a half prior to the decision herein and, according to appellant's brief, was emphasized in its brief below. Our opinion in that case was an exhaustive discussion

of the cases in this court involving the construction of the term "machine" and of its common meaning as shown by dictionaries. Among many other cases, we discussed the four CCPA cases mentioned below in the Customs Court's opinion. No mention is made by the Customs Court of our *Idl* case opinion. One of our conclusions was that the words of the *Simon, Buhler* case referred to below do not constitute a definition of what a machine is; another was that there has not been, in this court, a judicial determination of what a machine *is*. We determine in each case whether the device before us is a "machine." For our other views on what the common meaning of the term "machine" may be, we refer to our opinion in the *Idl* case.

More recently, in *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786, decided four months prior to the opinion below, in a case in which we held certain lamp cord pulleys to be "machines," we reaffirmed the conclusions reached in the *Idl* case, saying,

The issue here, as it was in the *IDL* case, must be resolved on the basis of the common meaning of the word "machines" when applied to the technical facts of the present case.

The opinion below does not mention the *Nord Light* case. We there said:

A common meaning of the word "machine," found in the dictionaries which we referred to in the *IDL* case, supra, is a device which may be either simple or complex, whose function is to increase the intensity of an applied force, *or to change its direction, or to change one form of motion or energy into another form.* [Emphasis added.]

We think this meaning is clearly applicable to the lawn sprinklers before us. On the basis of the testimony, and in accord with commonly known principles of elementary physics, the energy in the moving stream of water is applied to the sprinkler head to cause it to rotate. The outward motion of the water from the nozzles produces, by reaction, rotary motion of the mechanical device. The rotary motion of the sprinkler acts, in turn, on the moving stream of water to distribute it over the desired circular area. The energy of the water is converted by the sprinkler into mechanical motion, making a small water motor out of the sprinkler head which does useful work in distributing the water where it is wanted. We are constrained to find the following factual conclusions of the court below to be in error:

* * * it is clear that a sprinkler top does not apply force or energy; * * *. Neither does it modify force or energy, for the reason that the water power necessary to operate it is not changed or modified in any respect by the apparatus. A sprinkler top, such as here involved, is not a mechanical contrivance for the transmission of motion.

We note, in passing, that when the facts of the instant case are viewed correctly, the devices at bar would not be ruled out of the

category of "machines" by the passage from the *Simon, Buhler* case which the lower court erroneously seems to regard as a "definition" of a machine.

The judgment of the Customs Court overruling the protest is *reversed.*